UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| U.S. HOME CORPORATION, et. al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-1464-GBL-JFA |
| ) | |
| NATIONWIDE MUTUAL FIRE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on U.S. Home Corporation a/k/a U.S. Home Corp. DC Division ("U.S. Home") and Lennar Corporation's ("Lennar") (collectively as "Plaintiffs") Motion to Remand. (Doc. 7). This case concerns a contract dispute between Plaintiffs and Defendant Nationwide Mutual Fire Insurance Company ("Defendant"). Plaintiffs' Amended Complaint seeks a declaratory judgment of whether Defendant's liability insurance policy covers Plaintiffs in addition to the alleged third-party tortfeasors Rulex Plumbing, LLC a/k/a Rulex Plumbing, Inc. ("Rulex") and Rusmir Canic ("Canic") (collectively "Rulex"). (Doc. 1, Ex. 1).

The issue before the court is whether, under 28 U.S.C. § 1332(c)(1), Plaintiffs' claim against Defendant is a "direct action," thus defeating diversity citizenship and requiring the case to be remanded back to Circuit Court for Prince William County. The Court holds that Plaintiffs' claim is not a direct action because it is based on Defendant's status as Plaintiffs' insurer and not, as required by § 1332(c)(1), on Defendant's status as the insurer of a third party tortfeasor. Accordingly, Plaintiffs' Motion is DENIED because Plaintiffs' suit does not constitute a direct action under § 1332(c)(1).

1

## I. BACKGROUND

Defendant Nationwide is a corporation organized and existing under the laws of the State of Ohio. (Doc. 1). Rulex, previously a Virginia Limited Liability Company, and its agent Canic, were both located in the Commonwealth of Virginia. *Id.* Plaintiff Lennar is a foreign corporation licensed to do business in Virginia. (Doc. 1, Ex. 1). Plaintiff U.S. Home is a Delaware Corporation licensed to transact business in the Commonwealth of Virginia. *Id.* Together, Lennar and U.S. Home are in the business of building and selling residential communities. *Id.*

Beginning in 2005, Lennar was in the process of building a community in Williamsburg, Virginia known as "Colonial Heritage." (Doc. 1, Ex. 1). On June 29, 2005, Lennar and Rulex entered into a Subcontract Agreement for plumbing work at the Colonial Heritage community. *Id.* On September 5, 2008, Lennar and Rulex entered into a more general agreement, the Contractor Base Agreement ("Base Contract"), which provided that Rulex would perform plumbing work upon receipt of a Purchase Order from Lennar. *Id.* As part of its obligations under the Subcontract Agreement and the Base Contract, Rulex added Lennar as a named additional insured under Rulex's Liability Insurance Policy with Nationwide. *Id.*

Pursuant to the terms of the Base Contract, Rulex was obligated to perform work for Lennar:

> in a good and workmanlike manner, free from defects in workmanship or materials, acceptable to Lennar, and in strict accordance with (i) the plans and specifications, (ii) any applicable manufacturer's specifications, recommendations or requirements, (iii) applicable industry standards, codes or other rules or regulations, and (iv) the requirements necessary to complete the Work in strict accordance with Lennar's schedule.

(Doc. 1, Ex. 1).

Also under the Base Contract, Rulex is responsible, at its sole cost, for promptly repairing or replacing any defective work noted by Lennar, a third-party inspector, or the homebuyer. *Id.* Additionally, if Rulex fails to remedy defective work or fails to perform repairs, the Base Contract states that Lennar may perform the work on behalf of Rulex and demand payment from Rulex to recover all costs and expenses. *Id.*

Lennar and U.S. Home allege that Rulex performed defective work on four properties in the Colonial Heritage housing development—the Ruillova property, the Bondurant property, the Schumaker property, and the Carner-Wolford property. *Id.* Specifically, Lennar and U.S. Home allege that the Ruillova property experienced sewage and water intrusion, the Bondurant property experienced nonfunctioning toilets, the Schumaker property experienced a sewage pipe back up, and the Carner-Wolford property experienced other sewage issues. *Id.* At its own cost, Lennar repaired the malfunctions at the Ruillova and Bondurant properties. *Id.* Lennar verbally notified Rulex of the issues at the Schumaker and Carner-Wolford properties, but Rulex denied responsibility and refused to repair the issues. *Id.* As a result, Lennar also paid for repairs to the Schumaker and Carner-Wolford properties. *Id.* Lennar and U.S. Home then filed suit, seeking reimbursement for the repairs to the defective work that Rulex performed on the properties in the Colonial Heritage housing development. (Doc. 17, Ex. 1).

Lennar and U.S. Home allege that due to Rulex's deficient work, several affected homeowners brought claims against them. (Doc. 1, Ex, 1). Lennar and U.S. Home allege that the homeowners' claims were covered by Rulex's insurance policy with Nationwide. *Id.* Because Lennar and U.S. Home were "additional insureds" to the Nationwide insurance policy, they allege that Nationwide has a duty to pay them indemnity benefits for the homeowners'

claims. *Id.* Nationwide allegedly rejected Lennar and U.S. Home's requests for indemnification and failed to provide them with repayment for the homeowners' claims. *Id.*

## II. PROCEDURAL HISTORY

On June 23, 2014, Lennar and U.S. Home filed a complaint in the Prince William Circuit Court against Rulex Plumbing, LLC, Rusmir Canic, and Nationwide Mutual Fire Insurance Company. (Doc. 1, Ex. 1). The original complaint alleged breach of contract as to Rulex and Canic and sought a declaratory judgment as to Nationwide's liability to Lennar and U.S. Home. *Id.* On October 5, 2015, the Prince William Circuit Court entered an order titled "Agreed Order Severing the Plaintiffs' Contract Claim Against Rulex Plumbing, LLC and Rusmir Canic from the Plaintiffs' Declaratory Judgment Against Nationwide Mutual Fire Insurance Company, and Separately Docketing Plaintiffs' Action Against Nationwide." (Doc. 17, Ex. 3). The order directed Lennar and U.S. Home to file two amended complaints: one against Rulex and Canic, and another solely against Nationwide. *Id.* In accordance with this order, Lennar and U.S. Home filed their Amended Complaint against Nationwide in Prince William Circuit Court on October 9, 2015. (Doc. 1, Ex. 1). The Amended Complaint seeks declaratory judgment regarding:

> (a) Whether [Lennar and U.S. Home] . . . are additional insureds under the insurance policy; (b) Whether the insurance policy provides liability insurance coverage for [Lennar and U.S. Home] . . . for the claims of the homeowners as the result of the sub-standard work performed by Rulex and Canic; [and] (c) Whether Nationwide had a contractual obligation to defend [Lennar and U.S. Home] for the damages incurred by the homeowners that were covered by [Lennar and U.S. Home].

*Id.*

On November 5, 2015, Nationwide removed the declaratory judgment action to this Court on grounds of diversity jurisdiction. (Doc. 1). On November 16, 2015, Lennar and U.S.

4

Home filed this Notice to Remand to State Court. (Doc. 7). Nationwide filed its Opposition and Rebuttal to this Motion on November 24, 2015, and November 25, 2015, respectively. (Docs. 17, 18).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. FED. R. CIV. P. 12(b)(1). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that federal subject matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). There are two ways in which a defendant may present a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. In such a case, all facts as alleged by the plaintiff are assumed to be true. *Id.*

Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA Constr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). In such a case, the court may consider evidence outside the pleadings and regard the pleadings as mere evidence to determine the existence of jurisdiction. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). As a result, plaintiff's allegations find no presumption of truth, and a dispute of material facts will not preclude the trial court from evaluating the merits of claims underlying jurisdiction. *U.S. ex. rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

5

## IV. ANALYSIS

The Court DENIES Plaintiffs' Motion to Remand this action to the Prince William Circuit Court because this Court has diversity jurisdiction over this action. The Court holds that the "direct action" exception stated in 28 U.S.C. § 1332(c)(1) does not apply because Plaintiffs' claim against Defendant is based upon Defendant's status as *Plaintiffs'* insurer, not as the insurer of the third-party tortfeasor Rulex.

1. **The "Direct Action" Exception Does Not Apply Because Plaintiffs' Claim Against Defendant is Based Upon Defendant's Status as Plaintiffs' Insurer, Not as Rulex's Insurer**

The Court holds that the "direct action" exception does not apply; therefore, the Court has diversity jurisdiction over this action. Subsection (c) of 28 U.S.C. § 1332 provides:

> For the purposes of this section and section 1441 of this title–a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, *except that in any direct action against the insurer of a policy or contract of liability insurance,* whether incorporated or unincorporated, *to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of . . . every State and foreign state of which the insured is a citizen.*

28 U.S.C. § 1332(c)(1)(A) (emphasis added).

Often referred to as the "direct action" statute, § 1332(c)(1)(A) represents Congress' 1964 expansion of what constitutes a corporation's citizenship for diversity purposes. *See Eltsefon v. State Farm Mut. Auto. Ins. Co.*, 826 F. Supp. 2d 922, 924 (E.D. Va. 2011). Prior to § 1332(c)(1)(A), a corporation's citizenship for diversity purposes was statutorily limited to: (i) its state of incorporation and (ii) the state of its principal place of business. *See* 28 U.S.C. § 1332(a), (c). However, Congress amended this limitation after a flood of diversity cases were brought pursuant to a Louisiana statute that allowed injured claimants to bring an action directly against a tortfeasor's insurer without ever joining the tortfeasor as a party. *Eltsefon*, 826 F. Supp.

2d at 924. Under this Louisiana statute, injured parties were permitted to bring a diversity action directly against an out-of-state insurance company in federal court "even though diversity jurisdiction would not have existed if the local insured had been the only defendant or [had been] joined as a party defendant." *Id.*

Feeling that such diversity actions were not "within the spirit or the intent" of diversity action, Congress enacted § 1332(c)(1) in response to Louisiana's "direct action" statute to counter the statute's effect. *See* S. Rep. No. 88-1308, at 4 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 2278, 2784. Thus, § 1332(c)(1) provides that in a "direct action" against an insurer the insurer's citizenship is deemed to include the insured's state of citizenship." *Eltsefon*, 826 F. Supp. 2d at 924; *see also* § 1332(c)(1)(A).

Although Congress did not define "direct action" in the proviso, this Court in a recent opinion concluded that a "direct action" is an action by an injured party against an insurer to recover for damages caused not by the insurer, but by its insured who is not joined in the action. *See Eltsefon*, 826 F. Supp. 2d at 925. This definition captures the proviso's limited purpose of ensuring that injured plaintiffs who bring suit against the tortfeasor's insurance company rather than against the tortfeasor himself cannot bring claims in federal court under diversity jurisdiction. *Id.* The statute accomplishes this by only allowing "direct action" application in a very specific subset of claims. *See Corn v. Precision Contracting, Inc.*, 226 F. Supp. 2d 780, 782 (W.D.N.C. 2002) (holding that § 1332(c) (1) was intended to eliminate diversity jurisdiction for suits where the two parties are local residents but where the suit could be brought, under a "direct action" statute, directly against the foreign insurance carrier without joining the local tortfeasor).

Section 1332(c)(1) has a narrow purpose of restricting federal diversity jurisdiction in situations where state law authorizes a direct tort action by a third party, who was injured by an insured tortfeasor, against the insured's insurance company without joining the tortfeasor himself. *See Irvin v. Allstate Ins. Co.*, 436 F. Supp. 575, 577 (W.D. Okla. 1977). Therefore, courts employing § 1332(c)(1) must look to the status of the defendant insurer when determining whether a plaintiff's claims are "direct actions." *See Porter v. Buck*, No. 7:14CV00176, 2014 WL 3563415, at *4 (W.D. Va. July 18, 2014); *Eltsefon*, 826 F. Supp. 2d at 927. For example, in *Eltsefon*, this Court denied the plaintiff's motion to remand under § 1332(c)(1), holding that the plaintiff's action did not constitute a "direct action" because the claim was brought to address the insurance company's independent actions rather than to hold the insurer liable for the insured tortfeasor's actions. *See Eltsefon*, 826 F. Supp. 2d at 927. Though the plaintiffs in *Eltsefon* brought suit against the defendant insurer for actions not based on the liability of the alleged insured tortfeasors, *Eltsefon* is still instructive because it defines the purpose and application of § 1332(c)(1). *Id.* at 926. *Eltsefon* reinforces that courts have routinely limited "direct action" to cases where a party suffers injuries or damage due to a third party's actions and brings suit against the tortfeasor's liability insurer without joining the tortfeasor or first obtaining a judgment against him. *Id.* at 925 (citing *Beckham v. Safeco Ins. Co. of Am.*, 691 F. 2d 898, 901-02 (9th Cir. 1982)).

Due to the narrow and precise reasoning for the direct action statute, courts have consistently held that § 1332(c) (1) does not apply to cases brought by an insured *against its own insurer*. *See Powers v. Allstate Motor & Cas. Ins. Co.*, No. 10-CV-00997-WYD-KLM, 2010 WL 2270182, at *2 (D. Colo. June 7, 2010) ("The overwhelming weight of authority, including several cases from this District Court and the Tenth Circuit, hold that actions by an insured

against *his or her own insurer* are not direct actions within the meaning of § 1332(c)(1)."); *Porter v. Buck*, No. 7:14CV00176, 2014 WL 3563415, at *3 (W.D. Va. July 18, 2014) ("[C]ourts have repeatedly held that actions by an insured *against his or her own insurer are not direct actions* within the meaning of the statute."); *Roby v. Gen. Tire & Rubber Co.*, 500 F. Supp. 480, 484 (D. Md. 1980) (holding that plaintiffs' suit a*gainst their own insurance company did not constitute the type of "direct action"* referred to in the proviso clause of § 1332). Instead, § 1332(c)(1) is limited to situations where the foreign insurer's status is that of a payor of judgment due to the negligence of one of its insured. *See Powers*, 2010 WL 2270182, at *2 (citing *Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 674 (2d Cir.1992)). In other words, § 1332(c)(1) does not apply where an insured is seeking damages for another insured's negligence. *Id.*

In this case, Plaintiffs' claim is predicated upon the existence of Defendant's "liability insurance policy" with Rulex. (Doc. 1, Ex. 1). Plaintiffs allege that they are "additional insureds" under the insurance policy and that Defendant therefore has a duty to pay indemnity benefits to Plaintiffs for amounts paid to certain homeowners to repair work performed by Rulex. (Doc. 1, Ex. 1). Thus, Plaintiffs' claim before this Court is based on Plaintiffs' position as "additional insureds" under the very same insurance provision Defendant has with Rulex. *Id.* In other words, Plaintiffs' claim against Defendant does not seek a declaration that Defendant's insurance policy applies to *Rulex*, the alleged third party tortfeasor, as contemplated by § 1332(c)(1). Instead, like the plaintiffs in *Powers* and *Roby*, Plaintiffs seek declaratory judgment against Defendant in their position *as Defendant's insureds*, meaning they bring this request against their own insurer. This is precisely the type of action that courts have consistently held does not constitute a direct action. *See Eltsefon*, 826 F. Supp. 2d at 927; *Roby*, 500 F. Supp. at 484.

Plaintiffs nonetheless argue that although they are included as "additional insureds" under Defendant's insurance policy, their claim nevertheless qualifies as a "direct action" because their claim is by an injured party (Plaintiffs) against an insurer (Defendant) to recover damages caused by the insured who is not joined in this action (Rulex). (Doc. 18). This justification misses the clear intended application of § 1332: plaintiffs who bring suit against an insurance company that is *not their own*. *See Powers*, 2010 WL 2270182, at *2 (agreeing that the "direct action" exception is not applicable in cases brought by an insured against its own insurer). Section 1332(c)(1) should not be expanded to encompass claims where the injured plaintiff brings a claim against his own insurer, even if that defendant insurer also insures the third party tortfeasor whose actions are at issue. This expansion would negate the defendant insurer's status as a payor of judgment based on the negligence of its insured. *Id.* at *4. Instead, the defendant would become an insurance company providing applicable benefits to its insured—the plaintiff—as stated in the insurance policy at issue. *See Ming-Lewis v. Standard Fire Ins. Co.*, No. CCB-05-1472, 2005 WL 1923155, at *2 (D. Md. Aug. 10, 2005) (denying the plaintiff's motion to remand where the plaintiff brought an action against the insurance company that provided her homeowner's policy because § 1332 "does not include a plaintiff's suit against her own insurer under the contract").

Finally, interpreting "direct action" to encompass suits like the one here ignores the statute's limitation: a direct action may not include actions brought by the insured against the insurer that are based on the *insurer's* independent wrongs. *See Corn*, 226 F. Supp. 2d at 783. These claims, such as where the insurer fails to pay policy benefits or to meet its obligations, are disallowed under the direct action provision. *See id.* In *Corn*, the Court stated the inquiry of 1332(c)(1) is whether the defendant insurance company "stands in the shoes" of its legally

responsible insured. *Id.* This, the *Corn* court noted, is "in *contrast* to cases in which the injured party seeks to hold the insurer responsible for breaching the terms of its insurance policy or for its independent tortious acts." *Id.* (internal citations omitted); *see also Rosa*, 981 F.2d at 675 ("[T]he general rule is that the proviso does not affect suits against the insurer based on its independent wrongs.").

Here, Plaintiffs allege that Defendant refused to reimburse Plaintiffs, as Defendant's insured, for the payments made pursuant to the homeowners' claims. (Doc. 1, Ex. 1). Therefore, as stated in *Corn* and *Rosa*, Plaintiffs' claim does not constitute a "direct action" because it arises out of Defendant's alleged failure to pay policy benefits or to meet its obligation to compensate Plaintiffs under Plaintiffs' insurance policy with Defendant.

In light of the foregoing, the Court holds that Plaintiffs' claim does not qualify as a "direct action" under § 1332(c)(1). As a result, Defendant does not take on the citizenship of Rulex and is therefore not a resident of Virginia. Thus, because Defendant is a resident of Ohio and Plaintiffs are residents of Virginia, complete diversity exists between Plaintiffs and Defendant, and this Court has subject matter jurisdiction over Plaintiff's claim. Therefore, the Court DENIES Plaintiffs' Motion to Remand.

## V. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' Motion to Remand because Plaintiffs' claim does not qualify as a "direct action" under § 1332(c)(1) and this Court has subject matter jurisdiction over Plaintiff's claim.

Accordingly,

It is hereby **ORDERED** that Plaintiffs U.S. Home Corporation and Lennar Corporation's Motion to Remand (Doc. 7) is **DENIED**.

**IT IS SO ORDERED.**

ENTERED this \_\_\_8th\_\_\_ day of March, 2016.

Alexandria, Virginia
3 / 8 / 2016

                                               /s/
                                   Gerald Bruce Lee
                                   United States District Judge